**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHOISIMENE MORILUS, et al, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 07-0900 |
| | : | |
| COUNTRYWIDE HOME LOANS, | : | |
| INC. et al, | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

Stengel, J.                                                            June 20, 2007

This lawsuit involves allegations of fraud in the procurement of a residential mortgage. Defendant Residential Appraisal Services, Inc., the appraiser of the property that was the subject of the mortgage, has moved to dismiss all but one of the plaintiffs' causes of action against it under Rule 12(b)(6). For the reasons described below, I will grant the motion in part.

## I.    BACKGROUND

Plaintiff Choisimene Morilus purchased real property located at 4488 Memphis Road, Whitehall, PA on January 28, 2005. Compl. ¶ 10. Plaintiff Morilus executed a residential mortgage loan issued by defendant Countrywide Home Loans, Inc. Id. ¶13. Defendant Residential Appraisal Services, Inc. ("Residential") performed an appraisal of the property on January 6, 2005 and then provided the written appraisal to defendant Sunset Mortgage Co., L.P. Def.'s Mem. Mot. Dismiss, p. 1. Residential did not

communicate directly with the plaintiffs.  Plaintiffs allege that defendants "conspired to unfairly and deceptively induce plaintiffs to execute loan documents…[that were] premised upon a falsely inflated appraisal price" provided by Residential in order to qualify plaintiff for a loan with monthly payments she could not afford.  Compl. ¶ 17.

On January 29, 2007, plaintiffs filed a complaint in the Philadelphia County Court of Common Pleas alleging: (1) violation of the Truth-In-Lending-Act ("TILA") 15 U.S.C. § 1601 *et. seq.*; and Regulation Z of the Federal Reserve Board ("Regulation Z") 12 C.F.R. § 226.1 *et. seq.*; (2) violation of the Home Ownership and Equity Protection Act of 1994 ("HOEPA") 15 U.S.C. § 1639(a); (3) violation of the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 *et. seq.*; (4) violation of the Equal Credit Opportunity Act ("ECOA") 15 U.S.C. § 1641(e); and state law claims for negligence, fraud, breach of contract, and violations of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") 73 PA. CONS. STAT. ANN. § 2270.1 *et. seq* and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 PA. CONS. STAT. ANN. § 201-1 *et. seq.*  On March 5, 2007, defendants properly removed this case to federal court.  Defendant Residential filed this motion to dismiss on May 8, 2007.

## II.    STANDARD FOR A MOTION TO DISMISS

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of a complaint.  Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  In ruling on a motion to dismiss on the basis of the statute of

limitations, a court must determine whether the statement of the claim shows that the cause of action has been brought within the statute of limitations time period. Jordan v. Crandley, No. 99-915, 1999 U.S. Dist. LEXIS 13918 at *2 (E.D. Pa. Sept. 7, 1999).   The court may grant a motion to dismiss only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.  See also D.P. Enters. v.  Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

## III.    DISCUSSION

### A.    Truth-In-Lending Act Claim

The purpose of the Truth-In-Lending-Act (TILA) is "to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. §1601(a).  The Act is directed solely at parties extending consumer credit and defines "creditor" as one who both "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the

evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." Id. § 1602(f).  To be a creditor, one must also meet the requirements of Federal Reserve Board Regulation Z, which states that, in addition to the requirements set forth in TILA, "a person regularly extends consumer credit only if it extended credit…more than 25 times…in the preceding calendar year."  12 C.F.R. § 226.2(a)(17).

Residential argues that it cannot be held liable under TILA as a matter of law because it is not a creditor.  See Robey-Harcourt v. Bencorp Financial Co., Inc. 326 F.3d 1140, 1141 (10th Cir. 2003) (affirming a dismissal of plaintiff's TILA action because the defendant "was not a creditor and thus could not be held accountable under the Act."). Residential's president, Mary Olney, submitted an affidavit stating that Residential has had no contact whatsoever with plaintiffs and that it "is not and has not ever been in the business of offering or extending credit of any kind to any person."  Aff. of Mary Olney ¶ 8.  Plaintiffs have not made any allegations that Residential extended credit to them or extends credit regularly.  As indicated by the plain language of TILA and Regulation Z, Residential, since it is not a creditor, is not liable under the Act.

Although their complaint does not contain a separate conspiracy count, plaintiffs urge the court to hold defendant liable under a conspiracy theory.  They analogize to a case in which defendants, non-lenders involved in the transaction for a small home improvement loan, allegedly engaged in a scheme to obtain money from and defraud the plaintiff and other consumers.  Carr v. Home Tech Co. Inc., 476 F. Supp.2d 859, 868

(W.D. Tenn. 2007).  In Carr, the defendants were involved in the actual loan transaction; one was plaintiff's settlement agent and the other notarized the closing documents.  Id. at 863.  The court denied defendants' 12(b)(6) motion to dismiss TILA claims, even though defendants were not creditors, based on plaintiff's conspiracy allegations.  Id.

Here, in contrast to Carr, the plaintiffs' allegations of conspiracy are broad and are based on the provision of a "falsely inflated appraisal price."  Plaintiffs' specific allegations in regards to the TILA claim are that "defendants" failed to meet the disclosure requirements concerning finance amounts, finance charges, annual percentage rates, and the right to rescind.  Compl. ¶ 26.  While Carr indicates that non-creditors can be liable under TILA, the defendants in that case directly took part in the execution of the mortgage.  Here, plaintiffs do not allege that Residential was present during the execution of the mortgage or that Residential was responsible for making disclosures concerning a loan it had no part in issuing.

Since Residential is not a creditor subject to TILA and plaintiffs do not allege that it was a co-conspirator in the actual execution of the mortgage, I will grant defendant's motion to dismiss with respect to the TILA claim.

**B.    Home Ownership and Real Estate Protection Act Claim**

Amendments to TILA contained in the Home Ownership and Equity Protection Act of 1994 ("HOEPA") set forth additional disclosure requirements that must be met three days prior to the consummation of a lending transaction for high rate mortgages.  15

U.S.C. § 1639(b).  These requirements are also directed solely at creditors.  15 U.S.C. §

1639(a).  Therefore, since Residential is not a creditor, I will grant defendant's motion

with respect to the HOEPA claim.[1]

### C.   Real Estate Settlement Procedures Act Claim

The Real Estate Settlement Procedures Act ("RESPA") is designed to ensure that

consumers are made aware of settlement procedures and costs by imposing certain

disclosure requirements, and to eliminate kickbacks and referral fees that increase the cost

of the settlement process.  12 U.S.C. § 2601(b).  The Act applies to federally related

mortgage loans issued by federally insured lenders or creditors (as defined in TILA) that

make residential real estate loans.  12 U.S.C. § 2602 (1)(B)(iv).

The Act prohibits the splitting of charges in a settlement transaction other than for

services actually performed, but specifically does not prohibit "the payment of a bona fide

salary or compensation or other payment…for services actually performed."  12 U.S.C. §

2607(b)-(c).  Settlement services include the rendering of appraisals.  12 U.S.C. §

2602(3).  In <u>Yates v. All Am. Abstract Co.</u>, the plaintiff claiming a RESPA violation in

the refinancing of a home mortgage survived a 12(b)(6) motion filed by the parent

---

[1]     More importantly, HOEPA is directed at disclosure requirements following the execution of a mortgage
defined in the Act as "a consumer credit transaction that is secured by the consumer's principal dwelling,
other than a residential mortgage transaction."  15 U.S.C. § 1602(aa)(1).  The term "residential mortgage
transaction" is defined as "a transaction in which a mortgage . . .  or equivalent consensual security interest
is created or retained against the consumer's  dwelling to finance the acquisition or initial construction of
such a dwelling."  15 U.S.C. § 1602(w).  Thus, a first-time residential mortgage transaction is not subject to
HOEPA.  See <u>Wilson v. Parisi</u>, No. 3:CV-04-1737, 2006 U.S. Dist LEXIS 95952 at *43 (M.D. Pa. Feb 7,
2006; <u>Taylor v. Nelson</u>, No. 02-6588, 2006 U.S. Dist. LEXIS 3860, at *45 (E.D. Pa. Jan, 31, 2006)).  As it
appears from plaintiffs' complaint that transaction involves a first-time residential mortgage, plaintiffs may
be precluded from making a HOEPA claim.

mortgage company and another defendant simply by pleading that those defendants
participated in the fraudulent lending scheme and received or shared fees charged in
violation of RESPA.  No. 06-2174, 2007 U.S. Dist. LEXIS 34266, at *4-5 (E.D. Pa. May
10, 2007).  There are no such allegations here; therefore, plaintiffs have not properly
pleaded a violation of RESPA for splitting settlement charges.

RESPA also includes specific notification requirements triggered by the creditor's
receipt of an inquiry, termed a "qualified written request," from the borrower, which is "a
written correspondence, other than notice on a payment coupon or other payment medium
supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the
name and account of the borrower; and (ii) includes a statement of the reasons for the
belief of the borrower, to the extent applicable, that the account is in error or provides
sufficient detail to the servicer regarding other information sought by the borrower." 12
U.S.C. § 2605(e)(1)(B).  Creditors have 60 days following the receipt of a qualified
written request to make requested changes in the borrowers account, notify the borrower
of the results of any investigation pertaining to the account, and transmit the name and
telephone number of a representative who can answer any questions about the account.
12 U.S.C. § 2605(e)(2).  A party to the loan transaction is not subject to RESPA
requirements for responding to a qualified written request unless that party actually
received the qualified written request.  See Parker v. Long Beach Mortg. Co., No. 06-CV-
2002, 2006 U.S. Dist. LEXIS 72683, at *9 (E.D. Pa. Oct. 5, 2006) (finding that the

plaintiff's submission as an exhibit of the qualified written request was not sufficient to notify a party to whom it was not originally sent of its existence).

Plaintiffs assert that they "made written requests and complaints to defendants" that serve as "qualified written requests" under RESPA, and that these requests for information and account corrections were not responded to within the 60 day period required.  Compl. ¶ ¶ 39-42.  However, plaintiffs do not provide any details concerning which parties received these requests; since plaintiffs fail to allege that they submitted requests to defendant Residential, the plain language of the statute indicates that it cannot be held liable for the failure to respond to these inquiries.  I will therefore grant defendant's motion but permit plaintiffs leave to amend under Rule 15, so that they have the opportunity to present or clarify any RESPA claims arising from the payment Residential received for its appraisal services.[2]

### D.    Equal Credit Opportunity Act Claims

The Equal Credit Opportunity Act ("ECOA"), designed to prevent discrimination in the extension of credit, defines a creditor "as any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  15 U.S.C. § 1691a(e).  A credit applicant

---

[2]    Rule 15(a) states that "a party may amend the party's pleading only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  If a claim is vulnerable to dismissal under 12(b)(6), leave to amend is generally granted unless amendment would not cure the deficiency.  See Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 807 (3rd Cir. 2003).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  Id. (quoting Shane v. Fauver, 213 F.3d 113, 115 (3rd Cir. 2000)).

is defined as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit."  15 U.S.C. §1691a(b).  If a credit application is denied or revoked, the Act requires that the creditor either issues a written communication stating the reasons for the denial or provides a notice of the right to be given the reason for such denial.  15 U.S.C. § 1691(d)(1-2).

Plaintiffs allege in their complaint that in response to their application for an extension of credit, "defendants" made a counteroffer, in which they offered to lend credit on different terms than those sought by the plaintiffs, and failed to inform plaintiffs of the reason for denying their original application.  Compl. ¶ 49.  The plain meaning of the Act suggests that an entity not responsible for making decisions concerning credit extension is not subject to the provisions of the Act.  There are no indications in plaintiffs' complaint that defendant Residential participated in the decision to extend credit but only that Residential provided the falsely inflated appraisal.  I will grant defendant's motion with respect to the ECOA claim.

### E.    Pennsylvania Fair Credit Extension Uniformity Act Claim

Plaintiffs allege in Count VIII that defendants, as creditors or debt collectors, violated the Pennsylvania Fair Credit Extension Act ("FCEUA") which defines a creditor as "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to

be owed," and debt collector as "a person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor." 73 PA. CONS. STAT. ANN. § 2270.3.

The acts specifically alleged by plaintiff to be in violation of FCEUA are "using unfair and unconscionable collection methods; giving a false impression of the character, amount, or legal status of the alleged debt; using false and deceptive collection methods; making threats and/or taking illegal action; and otherwise using false, deceptive, misleading, and unfair and unconscionable means to collect and/or attempt to collect a debt." Compl. ¶ 68. All of these acts are distinctly related to the collection of the debt owed by plaintiffs, and as a result, Residential cannot be held liable under FCEUA because it did not act as a creditor or act as the creditor's agent to collect the debt. I will grant defendant's motion with respect to the FCEUA claim.

**F.    Pennsylvania Unfair Trade Practices and Consumer Protection Law Claim**

Plaintiffs also assert a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). The UTPCPL is not directed solely at creditors; any individual or corporation who engages in "unfair methods of competition or unfair or deceptive acts or practices" can be held liable under the act. 73 PA. CONS. STAT. ANN § 201-3. Although it generally addresses goods and services, the UTPCPL also extends to the sale of real estate. See In re Zisholtz 226 B.R. 824 (Bankr. E.D. Pa. 1998) (citing

-10-

<u>Metz v. Quaker Highlands, Inc.</u>, 714 A.2d 447 (Pa. Super. Ct. 1998)).

The UTPCPL has a catchall provision that prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. CONS. STAT. ANN § 201-2(4)(xxi).  Plaintiffs alleging a violation under this section of the UTPCPL must "allege with particularity the elements necessary to support a violation…as to a particular Defendant."  <u>Wilson</u>, 2006 U.S. Dist. LEXIS 95952, at *38 n. 13.  In <u>Wilson</u>, UTPCPL claims brought against lender and appraisal defendants involved in a scheme to market and sell property with the purpose of defrauding purchasers were dismissed with leave to amend, on grounds that "it is imperative that notice of particular unfair or deceptive acts or practices be provided" for each defendant.  <u>Id</u>. at *38.  In order for plaintiffs to recover, the unfair or deceptive acts alleged must meet all the requirements for common law fraud, which include "a material misrepresentation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages."  <u>Booze v. Allstate Ins. Co</u>, 750 A.2d 877, 880 (2000).

Plaintiffs have not made any specific allegations of fraud directed at Residential. However, since Residential does not have to be a creditor for plaintiffs to recover, I will grant defendant's motion but give plaintiffs leave to amend this count to state the cause of action with particularity.

### G.    Pennsylvania Credit Services Act Claim

The Pennsylvania Credit Services Act ("CSA") was passed to police the

interactions between credit services organizations, retail sellers, and buyers, and to

prevent false representation and misleading advertising aimed at potential debtors.  The

Act defines a credit services organization as "a person who, with respect to the extension

of credit by others, sells, provides or performs or represents that he or she can or will sell,

provide or perform any of the following services in return for the payment of money or

other valuable consideration: (i) Improving a buyer's credit record, history or rating. (ii)

Obtaining an extension of credit for a buyer. (iii) Providing advice or assistance to a

buyer with regard to either subparagraph (i) or (ii)."  73 PA. CONS. STAT. ANN. § 2182(1).

The Act is broadly construed to cover any untrue or deceptive statements made by a credit

services organization prior to the execution of a mortgage.

Plaintiffs allege violations of the CSA based on defendants' failure to adequately

explain the contractual terms and compensation amounts related to the mortgage.  As with

the numerous other claims directed at all defendants and having to do with the provision

of credit and/or credit services, Residential does not fall under the scope of the Act as a

creditor, or "credit services organization."  Therefore, I will grant defendant's motion

with respect to the Pennsylvania Credit Services Act Claim.

### H.      Breach of Contract Claim

Plaintiffs assert a breach of contract claim in Count VII of the Complaint, which

Residential does not address specifically in its motion to dismiss, although it moves to

dismiss this count.  Defendant asserts that it had no agreement with plaintiffs and that it

never even met plaintiffs.  Plaintiffs do not contend that they formed a contract with Residential and only generally aver that "plaintiffs and defendants were parties to the aforesaid express contracts…and/or contracts(s) implied at law."  Compl. ¶ 57.  Since plaintiffs do not assert that they entered into a contract with Residential, I will grant defendant's motion with respect to the breach of contract claim.

**I.      Fraud Claim**

Plaintiffs assert a claim for fraud in Count VI of the complaint, alleging that "defendants intentionally misrepresented and/or omitted material facts to plaintiffs…in an attempt to procure pecuniary gain from a security interest in plaintiff's home and monetary consideration from the plaintiffs and/or otherwise form the proceeds of the loan."  Compl. ¶¶ 53-54.  Both Pennsylvania state law and federal law require that allegations of fraud be plead with particularity.  See PA. R. CIV. P. 1019(b); FED. R. CIV. P. 9(b) ("in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.")

In order to satisfy the requirements of 9(b):

plaintiffs must plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud'…Plaintiffs must also allege who made a misrepresentation to whom and the general content of the misrepresentation.

Silverstein v. Percudani, 422 F. Supp.2d 468, 471 (2006) (citing Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004)). In Silverstein, the court granted defendants' motion to dismiss a fraud claim similar to the one alleged in this case, because the complaint listed multiple defendants, but did not specify who the plaintiffs met with at what time, what representations were made, and the nature of the alleged participation of each defendant in the fraudulent scheme.  Id. at 472-73.

The plaintiffs' claim in the present case suffers from the same deficiencies.  All counts in the complaint, including the claim for fraud, are directed at all defendants, as a group.  Again, the plaintiffs' allegations directed at Residential, both in the complaint and in the response to defendant's 12(b)(6) motion, are that it provided  "a falsely inflated appraisal price."  Compl. ¶ 17.  I will grant defendant's motion, but will give plaintiffs leave to amend the fraud claim to present the particular details required under Rule 9(b).

### J.    Punitive Damages Claim

Plaintiffs' final count is a claim for punitive damages, based on the fact that the "actions and misconduct set forth…were extreme and outrageous and done intentionally and/or recklessly and/or maliciously by said defendants against plaintiffs." Compl. ¶ 81.  Under Pennsylvania state law, "[p]unitive damages are only available in matters where the actor knows, or has reason to know . . . of the facts which create a high degree of risk or physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to that risk, and not in matters involving simple negligence."

<u>Guernsey v. Country Living Pers. Care Home(s), Inc.</u>, No. 3:CV-04-0423, 2006 U.S. Dist. LEXIS 31450 at *50 (M.D. Pa. May 19, 2006) (internal citations omitted).

With respect to defendant Residential, plaintiff has made no claim that it knew of the high degree of risk of economic harm to the plaintiffs or that it deliberately outrageously acted in conscious disregard of that risk.  Therefore, I will grant defendant's motion to dismiss the claim for punitive damages.

## IV.   CONCLUSION

I will grant Residential's motion to dismiss the TILA, HOEPA, ECOA, FCEUA, and the CSA claims since Residential is not a creditor.  I will also grant Residential's motion with respect to the breach of contract claim and punitive damages claim.  I will allow the plaintiffs leave to amend the RESPA, UTPCPL, and fraud counts.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHOISIMENE MORILUS, et al, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 07-0900 |
| | : | |
| COUNTRYWIDE HOME LOANS, | : | |
| INC. et al, | : | |
| Defendants. | : | |

<u>**ORDER**</u>

**AND NOW**, this 20th day of June, 2007, upon consideration of defendant

Residential Appraisal Services, Inc.'s Motion to Dismiss (Document No. 22) and the

responses thereto, it is hereby **ORDERED** that the motion is **GRANTED in part**.  The

following counts are dismissed with prejudice: II, III, V, VII, X, XI.  Plaintiffs are

granted leave to amend counts IV, VI, VIII of their complaint within twenty (20) days of

this order.

BY THE COURT:

 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.